

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 14, 2021

**BY ECF**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:   *United States v. James Martin*,
            20 Cr. 461 (ER)

Dear Judge Ramos:

    The defendant in this case, James Martin, is scheduled to be sentenced on July 21, 2021, at 3:30 p.m. For the reasons set forth below, the Government submits that a sentence within the Stipulated Guidelines Range of 87 to 108 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**I.  Background**

    **A.  Offense Conduct**

    As set forth in the November 4, 2020 presentence investigation report (the "PSR"), ECF No. 23, on or about June 11, 2020, the defendant met with a confidential source ("CS-1") in New York. At that meeting, CS-1 and Martin discussed a narcotics transaction involving approximately 10 kilograms of cocaine at a purchase price of $26,000 per kilogram. (PSR at ¶ 17.) CS-1 informed Martin that Martin would be able to inspect the cocaine once CS-1 viewed the purchase money. Martin explained to CS-1 that, when purchasing cocaine, he prefers to cook the cocaine to test its quality. (*Id.* at ¶ 18.) Martin also explained that he would come to the drug deal with his cousin who would inspect the cocaine. (*Id.* at ¶ 19.)

    Later that day, law enforcement surveilled a predetermined meeting location where CS-1 and Martin spoke again. (*Id.* at ¶¶ 21-22.) Martin told CS-1 the money was in a vehicle near the location and asked about purchasing 35 or 40 kilograms of cocaine in future transactions. (*Id.*) Martin also informed CS-1 that his co-conspirator, Kenneth Robinson, would be the one to cut and cook the cocaine to test its quality. (*Id.* at ¶ 23.) Martin then entered a vehicle and acquired a bag that contained approximately $250,000 in cash. (*Id.* at ¶ 26.) Martin explained that there was extra money for himself. CS-1 then passed Robinson the hotel room key so that CS-1 could enter the hotel and inspect the cocaine. (*Id.* at ¶26.) After Robinson entered the lobby of the hotel, law enforcement arrested the defendants. (*Id.* at ¶27.) Law enforcement recovered approximately

$350,000 in cash in the bag. (*Id.* at ¶27.) Law enforcement also searched Robinson incident to arrest and found, among other things, money bands and a knife. (*Id.* ¶ 28.)

On September 2, 2020, the defendant agreed to waive indictment and pleaded guilty to an information charging him with participating in a narcotics conspiracy. (ECF No. 21.) The defendant pleaded guilty pursuant to a plea agreement that included a stipulation between the parties that the Guidelines range applicable to the defendant is 87 to 108 months' imprisonment (the "Stipulated Guidelines Range").

### B. The Defendant's Criminal Conduct

The defendant has a lengthy criminal history, with at least eight convictions. His convictions include dangerous, violent, and reckless conduct.

In 1991, when the defendant was seventeen years' old, he was convicted for conduct he undertook involved in distributing crack cocaine. He was adjudicated as a youthful offender and sentenced to 5 years of probation. (PSR ¶ 52.)

In 1998, the defendant was convicted of an offense relating to his presence in a stolen vehicle. (*Id.* ¶ 53.) The defendant was sentenced to 3 years' probation.

In 2000, while still on probation as a result of the preceding conviction, the defendant was convicted of a New Jersey offense relating to his attempt to cash a check using a fraudulent identification. (*Id.* ¶ 54.) When he was arrested, the defendant persisted in claiming the false identity to law enforcement. He received a suspended sentence of 270 days in prison and 3 years' probation.

In 2003, while still on probation as a result of the preceding conviction, the defendant was convicted of a firearms offense. (*Id.* ¶ 55.) This offense grew out of a 2002 incident where the defendant fired two gunshots in Upper Manhattan. A bag the defendant was carrying at the time was recovered and contained two loaded guns. The defendant admitted that he had fired the two shots earlier that day. The defendant received a sentence of one year.

In 2005, the defendant was convicted of driving while ability impaired, relating to an accident. (*Id.* ¶ 56.) Following this accident, an on-site breathalyzer indicated the defendant had a blood alcohol level of 0.171, more than twice the legal limit. He was sentenced to 15 days' imprisonment.

In 2007, the defendant was again convicted, in New Jersey, of driving while intoxicated. He received a sentence of a fine, loss of license, and an educational program. (*Id.* ¶ 57.)

In 2009, the defendant was convicted of conspiracy to commit bank fraud, in the District of New Jersey. (*Id.* ¶ 58.) He was sentenced to a 30 months' imprisonment, to be followed by three years' supervised release. The underlying scheme related to a counterfeit check bank fraud and identity theft scheme beginning in or about 2004.

In 2010, the defendant was convicted, for the third time, of driving while ability impaired. (*Id.* ¶ 59.) In this instance, the defendant's on-site breathalyzer indicated a blood alcohol level of 0.147. The defendant also provided a false driver's license and claimed another person's identity. In fact, the defendant was operating this vehicle with a suspended license.

## II. Discussion

### A. Applicable Law

As the Court is aware, the Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Guidelines Sentence Is Reasonable in This Case

The Government respectfully submits that a sentence within the stipulated Guidelines Range is sufficient, but not greater than necessary, to comply with the purposes of sentencing. The Section 3553(a) factors most applicable in this case include the nature and seriousness of the offense, the need to provide just punishment for the offense, the need to promote respect for the law, the need to afford adequate deterrence to criminal conduct.

As set forth above, the defendant knowingly participated in a large-scale cocaine trafficking conspiracy. The defendant was arrested attempting to purchase 10 kilograms of cocaine

for approximately $250,000 cash and even suggested to the CI that he was willing to make larger bulk purchases. That defendant was presenting himself capable of selling tens of kilograms of cocaine and was able to produce approximately $350,000 cash in short order speaks to the nature of the defendant's drug dealing.

The PSR reports that the defendant has essentially no assets. (PSR ¶ 100.) But the defendant's account that his involvement in the instance offense was a momentary lapse is nearly incompatible with his desire to engage in such high-level drug trafficking, his knowledge of narcotics trafficking including the details of testing cocaine for quality, and his ability to obtain a tremendous amount of cash on short notice is nearly incompatible with the defendant's account.

This drug trafficking conduct is incredibly serious. Cocaine is highly addictive and can be deadly, harming individuals, families, and communities. Its high street value and its international supply chain fuels violence at every step from farm, through processing and transportation, and in the U.S. cities where it is sold.

Further still, this is not the defendant's first conviction. He has a lengthy rap sheet. Although many of these convictions are old and thus do not count toward his Criminal History computation, the defendant engaged in serious criminal activity, including firing a weapon on a city block and possessing two loaded guns. He has also been convicted of drug crimes. He has numerous identity theft and bank fraud convictions. These include his 2009 federal conviction, when he was sentenced to 30 months' imprisonment following a conviction for bank fraud in the District of New Jersey. (PSR ¶ 58.) Although the defendant has completed a significant term of imprisonment, and has had many opportunities to amend his conduct and leave behind criminal activity, he was plainly undeterred from engaging in further illegal conduct. Accordingly, a significant sentence is appropriate to promote respect for the law and to deter the defendant from future criminal conduct.

### III. Conclusion

      For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: /s/ _____
Peter J. Davis
Daniel G. Nessim
Assistant United States Attorneys
(212) 637-2468 / -2486

cc:    counsel (by ECF)